ELLIS, Judge:
This is an “executive officer” suit for damages for personal injuries suffered by Sallie Phillips when she was attacked and beaten by an inmate at Louisiana Correctional Institute for Women at St. Gabriel, Louisiana. Made defendants are C. Paul Phelps, who was, at the time of the assault, the Deputy Director of the Louisiana Department of Corrections; the Estate of Elayn Hunt, then Director of the Department of Corrections; J. D. Middlebrooks, then Warden of L.C.I.W.; Faye Fletcher, then Assistant Warden of L.C.I.W.; V. G. Walker, then Security Administrator at L.C.I.W.; and Rebecca Hutchinson, then Chief of Security at L.C.I.W. In essence, all defendants are charged with violating the duty of furnishing plaintiff a safe place to work.
The case was tried on its merits before a jury, which rendered a verdict for plaintiff and against all defendants for $137,000.00. Judgment was signed accordingly, and defendants have appealed. Plaintiff has answered the appeal asking for an increase in the award.
On October 5, 1975, while working as a Correctional Officer II at L.C.I.W., plaintiff was engaged in collecting trays in the administrative segregation unit, following the noon meal. This unit consists of a number of cells in which inmates who are disciplinary problems, who are violent, or who need protection are placed in isolation. One of the inmates so isolated on the day in question was Pam Reed.
As plaintiff was picking up the trays, Pam Reed, who was apparently sick, asked for a mop to clean up some vomit from the floor in her cell. At the time of the request, plaintiff testified that the inmate *900 was still gagging. Plaintiff told her to wait until the trays were picked up. After this was done, plaintiff walked to a shower room located outside the segregation unit, got a mop and brought it back to the cell. She tried to pass the mop underneath the door and was unable to do so. Plaintiff then unlocked the cell door and opened it slightly to pass the mop through. Pam Reed, who was standing just inside the door immediately pushed the door open and began to struggle with plaintiff. As a result of the beating which ensued, plaintiff suffered the injuries complained of herein.
The prison regulations relative to the administrative segregation unit contain the following provision:
“When this unit contains a resident that is assaultive or has aggressive tendencies then two staff members will be present at any time her door is opened.”
Plaintiff was familiar with the above regulation, and was aware that Pam Reed had aggressive tendencies. However, she stated that she opened the door to hand in the mop without first summoning another matron because Pam Reed was sick, and because the prison staff was shorthanded that day and there was no one to call.
The record shows that there were five correctional officers on duty at L.C.I.W. at the time plaintiff was assaulted. There was a rodeo at Angola that same day, and 119 of the 150 inmates had gone to attend the rodeo. There remained 31 inmates at the prison. Five correctional officers had accompanied the inmates to Angola. Plaintiff alleges that it was for this reason that L.C.I.W. was shorthanded.
Although the testimony is somewhat contradictory, we find it clear that the normal complement of correctional officers on duty at any one time was six. It is uncontradict-ed that each officer works a five-day week of eight-hour days. There were 28 correctional officers at the prison at that time, two of whom filled administrative positions and did not do shift work. Eight were off duty at all times, leaving 18 officers to man the three daily shifts, or six per shift.
Warden Middlebrooks testified that the records of the institution showed that during the six weeks preceding the assault on plaintiff, there was only one day on which seven officers reported for duty. He further testified that it was usual for one of the six officers to be engaged off the prison grounds in transporting inmates for one reason or another. He considered five officers on duty at the prison to be a normal complement.
Another witness, Mrs. Dorothy Bateman, testified that she would have up to 13 people under her supervision on a shift, but later stated that she was including all personnel in that figure. She then testified that there would be six officers on a shift under her supervision. Other testimony indicates that there would be six officers total on a shift, including the supervisor. We conclude that the shift was probably one officer short on October 5, 1975.
The defendants contend that plaintiff was contributorily negligent in opening Pam Reed’s cell door without having another officer present. It is clear from the record that Mrs. Phillips could have summoned another officer so as to comply with the regulation, although the other officer might not have been immediately available. Mrs. Martin, the shift supervisor, testified that she would have gone to plaintiff’s assistance if called, or that she could have sent Mrs. Smiley, who was on duty at the infirmary. Plaintiff, however, made no attempt to summon assistance, stating that she thought no help was available, and that she thought Pam Reed needed immediate assistance.
Neither of these assumptions are borne out by the record. Mrs. Martin and one other officer were available for assistance. We can see no emergency in the circumstances surrounding Pam Reed’s illness. Although she had thrown up, and although there was vomit on the floor of her cell, Pam Reed was certainly not in any danger nor was her illness of such a nature as to require immediate assistance. Plaintiff proposed only to give her a mop, and not to render any first aid or other form of assist- *901 anee. We can see no dire emergency necessitating the cleaning up of the cell floor. It is certainly not such as to justify the violation by plaintiff of a clearly reasonable regulation such as the one in question.
We are of the opinion, therefore, that plaintiff was negligent in opening the cell door while alone, in violation of the regulations of L.C.I.W., and that her negligence is such as to bar her recovery in this case.
Since we are of the opinion that plaintiff is barred from recovery, we need not consider the other issues presented by this appeal.
The judgment appealed from is therefore reversed and set aside, and there will be judgment herein in favor of defendants dismissing plaintiff’s demands, at her cost.
REVERSED AND RENDERED.